IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KRISTEN BLOMQUIST, et al.,

    Plaintiffs,

        v.                           CIVIL NO.: 13-1835 (MEL)

THE HORNED DORSET PRIMAVERA, INC., et al.,

    Defendants.

**OPINION AND ORDER**

**I.    Procedural History**

On November 1, 2013, Kristen Blomquist ("Blomquist") and Kevin Warner ("Warner") (collectively "plaintiffs") filed a complaint against the Horned Dorset Primavera, Inc. and Universal Insurance Group, Inc. (collectively "defendants") alleging that defendants were negligent in relation to a slip and fall that Blomquist experienced at the Horned Dorset Primavera hotel in Rincón, Puerto Rico (the "hotel"). See ECF No. 1. Pending before the court is defendants' motion for summary judgment. ECF No. 80. Plaintiffs opposed the motion. ECF No. 82. For the following reasons defendants' motion for summary judgment is denied.

**II.    Uncontested Facts**

On April 4, 2013 plaintiffs checked into the hotel to attend a friend's wedding, which was held at the hotel on April 6, 2013.[1] ECF Nos. 1, ¶ 6; 9, ¶ 6. After the wedding ceremony, plaintiffs attended a banquet and reception, which were also held at the hotel. ECF Nos. 1, ¶ 7; 9,

---

[1] According to averments in the complaint that defendants have admitted defendant Horned Dorset Primavera, Inc. operates the hotel and defendant Universal Insurance Group, Inc. is Horned Dorset Primavera, Inc.'s public liability insurance carrier. ECF Nos. 1, ¶¶ 2-3; 9 ¶¶ 2-3. Neither the complaint nor the facts that have been proposed by the parties indicate whether either of these entities owns the hotel.

¶ 7. After the reception, some of the guests decided to use the pool at the hotel. ECF Nos. 1, ¶ 9; 9, ¶ 9. Blomquist left the area where the reception was held in order to change into her bathing suit. Id.

In the early morning hours of April 7, 2013, between 12:00 a.m. and 1:30 a.m., wedding guests poured water and soap onto the dance floor and used the dance floor to dance, slip, and slide on the wet, soapy surface; the guests slid on their front sides, backsides, and sideways. ECF Nos. 80-1, ¶¶ 1-2; 82-1, at 1, ¶¶ 1-2. While wearing his tuxedo, Warner used the wet, soapy dance floor to dance, slip, and slide on its surface. ECF Nos. 80-1, ¶ 3; 82-1, at 1 ¶ 3. At some point between 12:00 a.m. and 1:30 a.m., after the wedding guests had poured water and soap on the dance floor and once Blomquist returned to the reception after putting her bathing suit on, she slipped and fell on the wet, soapy dance floor.[2] ECF Nos. 80-1, ¶¶ 2, 4; 82-1, at 1, ¶¶ 2, 4.[3]

### III.   Legal Standard

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about

---

[2] Plaintiffs allege in the complaint that she returned to the reception area of the hotel, after putting on her bathing suit, the dance floor was already "slippery." ECF No. 1, ¶ 10. In response to summary judgment plaintiffs propose as an uncontested fact that when Blomquist "returned to the dance floor after putting her bathing suit on, as she stepped onto it, she slipped and fell, as it was wet by that time." ECF No. 82-1, at 4, ¶ 12. Although none of the proposed facts refer to the dance floor as "slippery," Blomquist did testify in her deposition: "When I stepped on the dance floor, and I slipped and fell, it was slippery." ECF No. 82-7, at 46: 23-24. Ultimately, this description is not pivotal to the resolution of the pending motion for summary judgment.

[3] It is also uncontested that Warner "has not received any emotional treatment as a direct consequence of" the incident and that "Blomquist has not received any psychological or emotion treatment in relation to" her slip and fall.[3] ECF Nos. 80-1, ¶¶ 7-8; 82-1, at 1 ¶¶ 7-8. Defendants' motion for summary judgment, however, is limited to arguments that they are not liable to plaintiffs for negligence—it contains no arguments that specific damages claims should be dismissed at the summary judgment stage. Therefore, whether Warner and Blomquist have received psychological and / or emotional treatment related to Blomquist's slip and fall is not relevant to the disposition of the pending motion for summary judgment.

the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of

probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

IV.     **Legal Analysis**

Article 1802, Puerto Rico's general tort statute, provides for damages caused by a defendant's negligent behavior: "[a] person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann., tit. 31, § 5141. In order to prevail in a general tort claim under Puerto Rico law, a plaintiff must establish the following elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission . . . , and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007) (citing Tórres v. KMart Corp., 233 F. Supp. 2d 273, 277-78 (D.P.R. 2002)). Defendants present two arguments that plaintiffs cannot prevail on their Article 1802 claim: (1) that they were not negligent; and that (2) plaintiffs "did not prove that the alleged injuries were the direct result of any actions or omissions" on their part.[4] ECF No. 80-5, at 2-3.

The element of negligence has two sub-elements: duty and breach. Vázquez-Filippetti, 504 F.3d at 49. "In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Id. (citing Ortíz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic. Trans. 407 (1973)). A defendant breaches that duty if he acts or fails to act "in a way that a reasonably prudent person would foresee as creating undue risk." Vázquez-

---

[4] Presumably defendants intended to state that plaintiffs *cannot* prove that any of their acts or omissions caused the injuries alleged, as plaintiffs need not actually prove the elements of their claim until trial.

Filippetti, 504 F.3d at 49 (citing Pacheco Pietri v. ELA, 1993 P.R. Offic. Trans. 839,817 (1993) (Alonso, J., dissenting)). Thus, a plaintiff must show that the defendant failed to "exercise due diligence to avoid foreseeable risks." Lang v. Corporación de Hoteles, 522 F. Supp. 2d 349, 365-66 (D.P.R. 2007) (quoting Malavé-Félix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir. 1991)); see also Vázquez-Filippetti, 504 F.3d at 49. In particular, for claims based on allegedly dangerous conditions on commercial property, a plaintiff must show that a dangerous condition existed which caused her injury and that the defendant had either actual or constructive knowledge of the dangerous condition. Vázquez-Filippetti, 504 F.3d at 50; Mas v. United States, 984 F.2d 527, 530 (1st Cir. 1993); Tórres, 233 F. Supp. 2d at 278.

      Plaintiffs' theory of liability is that the hotel failed to maintain the dance floor in a safe condition and failed to warn Blomquist of the "dangerous condition" on the dance floor, causing her to slip and fall. ECF No. 1, ¶¶ 21-22. The hotel indeed had a duty to plaintiffs, as "[a]n enterprise which maintains a public place for purpose of transacting business for its own benefit, is bound to maintain it in such a safe condition that one who is induced to enter the premises will not suffer any damages." Kaden v. Wyndham El Conquistador Resort & Country Club, Civ. No. 02-1547 (PG), 2005 WL 1949694, at * 7 (D.P.R. Aug. 15, 2005). "This duty of care requires that commercial establishments 'take the necessary precautions or . . . adopt the necessary security measures to preserve the safety of their customers.'" Id. (citing Bou Maldonado v. K-mart Corp., Civ No. 97-1268, 2001 WL 1636768, at *2 (D.P.R. Oct. 18, 2001)); see also Cotto v. C.M. Ins. Co., 16 P.R. Offic. Trans. 786 (1985) ("Undoubtedly a person or company that runs a business for profit, which in its commercial transactions deals directly with the public, must take all possible safety measures to ensure that its clients will suffer no harm."). In order to prevail, however, "plaintiffs must prove that the injury was reasonably foreseeable and that it could have

been avoided had defendant acted with care." Id. (citing Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 124 F.3d 47, 51 (1st Cir. 1997)).

Defendants contend that because the "wedding guests, including [p]laintiffs" created the allegedly dangerous condition by pouring water and soap onto the dance floor and "that there was not enough time for [d]efendants to discover or stop such self-inflicted hazard by [p]laintiffs[] suggests that the actions and omissions of [p]laintiffs were the only contributory cause for their alleged injuries." ECF No. 80-5, at 2. There are several flaws to this argument. Although it is uncontested that "wedding guests" poured soap and water onto the dance floor, defendants have not cited to evidence in the record suggesting that Warner or Blomquist was among the guests who did so. Not only do defendants lack evidence to support their argument that plaintiffs actually participated in wetting the floor, Blomquist testified during her deposition that she did not see wedding guests throwing water and soap on the dance floor at any time. ECF No. 82-7, at 36: 23-34; 37: 1-2. Furthermore, whether or not there was sufficient time to prevent the incident is a matter for the jury to determine, as plaintiffs indeed have evidence that hotel staff were aware of the wet, soapy floor. Geradline Thorvenin, who was employed by the hotel as a sommelier, testified that she was concerned that the dance floor was getting wet and that guests were sliding on the floor, but that she did not order them to stop or call a guard to have the guests stop. ECF No. 82-3, at 8: 16-21; 36: 14-25; 37: 2. Enrique Vélez Lorenz, a restaurant manager the night of the wedding at issue, also witnessed that there was water on the dance floor and "started watching [wedding guests] sliding on their chests." ECF No. , at 21: 10-15. Vélez was not only aware that guests were slipping and sliding, but took a video of the events on the dance floor:

> Q: . . . You were concerned that the floor could get ruined and you were also concerned that a guest could slip and fall on that wet floor, right?
>
> A: Not really.
>
> Q: Not really? You didn't care?
>
> A: Not that I didn't care, but they were not the best guests I had. They were mean and rude.
>
> Q: Oh, so they were mean and rude and let them [*sic*] slip and fall.
>
> A: Before we tried to do things and they would do it their way, you see. When I saw them, there was no stopping them like, 'Hey, look.' I never thought I was dealing with little kids or—you know. When I saw that, they were jumping and doing their stuff.
>
> So I took the video only concerned that, okay, now when the company comes and sees that they ruined the floor, blame it on us, you know. They took the tent and so you could see the proof.

Id. at 22: 2-20. Finally, Héctor Fernández Estrada, a self-employed waiter and bartender, actually saw the guests wet the dance floor and then begin "to slide from one side to the other." ECF No. 82-6, at 7: 24-25; 8: 1-3; 13: 20-25. Although Fernández was not an employee of the hotel at the time of the incident and did not tell the hotel's managers that the wedding guests were deliberately wetting the dance floor, he testified that hotel personnel were also present at the scene, observing what was occurring. Id. at 14: 22-24; 15: 6-17. Fernández did not see any hotel employees tell the guests not to wet the floor. Id. at 15: 24-15; 16: 1-2.

     A reasonable trier of fact could find defendants breached their duty of care to Blomquist, as a guest of the hotel, in failing to prevent a foreseeable risk by allowing the dance floor to remain wet and soapy and / or failing to warn Blomquist of the condition of the dance floor. It is undisputed that the floor was wet and soapy prior to Blomquist's fall. Based on the testimony of the various staff members and employees who were present prior to and at the time of the

incident, a reasonable jury could find that defendant had actual or constructive knowledge of the wet, soapy floor—which defendants concede was a dangerous condition. As to the foreseeability of plaintiff's injuries, "[f]oreseeability is usually a jury question," and a rational jury could surely conclude that a guest slipping and falling was a foreseeable consequence of a wet, soapy dance floor. Kaden, 2005 WL 1949694, at * 6 (citations omitted). Similarly, such a jury could find that the hotel's failure to take measures to dry the floor and / or prevent the wedding guests from wetting it proximately caused Blomquist to slip and fall, resulting in injuries to her. Viewing the summary judgment record in the light most favorable to plaintiffs, they could prevail on their negligence claims against defendants.

Next, defendants argue that "[p]laintiffs voluntarily and knowingly assumed the risks involved in dancing, slipping and sliding on a wet, soaped and slippery dance floor. . . ."[5] ECF No. 80-5, at 4. They continue that "[p]laintiffs self-inflicted an inherent dangerous activity by voluntarily participating in the unreasonable risky use of the dance floor after it inherently presented a wet, soaped and slippery condition that resulted in an injury." Id. In support of this assumption of risk argument, defendants cite to Soto Rivera v. Tropigas de Puerto Rico, 117 D.P.R. 863 (1986), which they claim "clearly held that the Fireman's Rule applied in Puerto Rico as estoppels [sic] to suits brought by those who took the risk of performing dangerous activities." Id. In Soto Rivera the Supreme Court of Puerto Rico stated that the Fireman's Rule "in essence . . . 'bars tort claims by firefighters . . . against persons whose negligence or recklessness causes the fire or other hazard that injures the officer.'" 117 D.P.R. 863, 17 P.R.

---

[5] Defendants also argue, for a second time, that plaintiffs "contributed in creating the risk," but once again they have not cited to evidence suggesting that Blomquist or Warner participated in pouring water and soap on the dance floor or encouraged others to do so. ECF No. 80-5, at 4. While it is clear from the summary judgment record that some wedding guests contributed making the dance floor wet, no evidence has been brought to the court's attention that plaintiffs, specifically, did or that *all* guests at the wedding participated in pouring water and soap on the dance floor. Whether Warner, who himself was slipping and sliding on the dance floor, failed to exercise due care in not warning his spouse that the dance floor was wet and soapy prior to her return after she returned to the reception with her bathing suit on is not a matter that has been specifically argued in the pending dispositive motion.

Offic. Trans. 1035, 1040 (1986). The Supreme Court discussed public policy rationales that justify a circumscribed duty of care to professional rescuers, including "the legislative scheme of salary, disability, and death benefits to which firemen are particularly entitled for injuries sustained in the performance of their duties" and "the decision to meet the public's obligation to its officers collectively through tax-supported compensation rather than through individual tort recoveries." Id. at 1044 (citation and internal quotation marks omitted). It noted that "Puerto Rico has embraced this point of view" by virtue of the workmen's compensation act and special disability and death pensions for firemen. Id. at 1045 (citing Laws P.R. Ann. tit 11, § 1 *et seq.*; Laws P.R. Ann. tit 25, § 376 *et seq.*). In Ortiz Andújar v. Commonwealth, the Fireman's Rule was extended to cover policemen. 122 D.P.R. 817 (1988); see also In re San Juan Dupont Plaza Hotel Fire Litig., 43 F.3d 1456 (1st Cir. 1994) (unpublished disposition) ("Puerto Rico adheres to an expanded version of the hoary "Fireman's Rule," recast in modern times as the "Professional Rescuer's Rule." Under that rule, there is no tort liability when . . . the risk created by the defendants' conduct is one that the plaintiff predictably encounters when he enters private property in the course of carrying out his professional duties as, say, a firefighter or police officer.") (citing Soto Rivera, 117 D.P.R. at 867; Ortiz Andújar, 122 D.P.R. 817; Alvarado v. United States, 798 F. Supp. 84, 87 (D.P.R. 1992)); Alvarado, 798 F. Supp. at 87 ("[T]he Fireman's Rule in essence provides that because of the inherently dangerous nature of their job, policemen and firefighters are barred from filing suits against persons whose negligence or lack of care caused the fire or risk which led to their injuries or deaths.").

There no indication in Soto Rivera or its progeny, however, that the Fireman's Rule applies outside the context of those who encounter inherent dangers in their jobs.[6] The Supreme Court of Puerto Rico explained: "In our jurisdiction we have adopted [the concept of assumption of risk] in its primary and secondary senses: (1) the *primary* sense—under our consideration here, where there is a limited duty of care on defendant's part; and (2) the *secondary* sense—which is actually a form of comparative negligence." Soto Rivera, 17 P.R. Trans at 1039 (citing Viñas v. Pueblo Supermarket, 86 P.R.R. 31, 34 (1962); Palmer v. Barreras, 73 P.R.R. 266 (1952); Echevarría v. Despiau, 72 P.R.R. 442 (1951)) (emphasis in original). As previously mentioned, this limited duty of care applies to professions who face predictable risks in their employment and have alternate means of seeking compensation for injuries that arise while performing their jobs. Commercial establishments such as hotels certainly do not have such a limited duty of care to their guests. See, e.g., Kaden, 2005 WL 1949694, at * 7. Defendants may argue at trial that Blomquist assumed the risk of slipping and falling in the secondary sense—i.e. that the accident was in fact caused by her own negligence in stepping onto a wet, soapy dance floor—but any such secondary assumption of risk argument is an issue for trial and does not warrant summary dismissal of plaintiffs' claims. Under Puerto Rico's comparative negligence system, the jury can assess whether defendants' negligence caused the incident, whether plaintiffs' negligence caused Blomquist's injuries, or whether each side exhibited negligence that contributed to Blomquist falling and sustaining injuries. Because trial-worthy issues exist as to whether defendants breached their duty of care to plaintiffs and whether such breach caused plaintiffs' injuries, defendants' motion for summary judgment is denied.

---

[6] Defendants have not cited to any cases from Puerto Rico which stand for the proposition that the Fireman's Rule applies to general negligence cases that do not involve inherently-risky professions, and a review of the relevant jurisprudence does not reveal any such case.

## V. Conclusion

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 80) is DENIED. Genuine issues of material fact remain with regard to whether defendants were negligent in failing to maintain the hotel's premises in safe condition and / or in failing to warn Blomquist of a dangerous condition and, if so, whether such negligence caused Blomquist to fall and suffer injuries. As to defendants' argument that plaintiffs assumed the risk of suffering such a fall and are precluded from recovery by the Fireman's Rule, they are free to argue at trial that plaintiffs' own negligence caused the injuries in question.  However, the Fireman's Rule does not apply to the facts of this case to prohibit plaintiffs' cause of action—whether or not plaintiffs were contributorily negligent is a matter for the jury to consider.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 27th day of April, 2015.

s/Marcos E. López
U.S. Magistrate Judge
